**IULIO M. TAUFAASAU et al., Appellee**

**v.**

**R. S. MANUMA, Appellant**

No. 123-1963

High Court of American Samoa

Civil Jurisdiction; Appellate Division

[Matai Name: "Mauga" of Pago Pago]

October 11, 1967

Mageo, counsel for Iulio M. Taufaasau.
Tuia, counsel for R. S. Manuma.
Tago, counsel for Sialega P. Mauga.
Salanoa, *pro se*

**HYDEN,** *Chief Justice*

This is an appeal from a decree entered by the Trial Division on March 1, 1965 in case No. 123-1963 styled *Iulio M. Taufaasau et al. v. R. S. Manuma* [sic], in which it was ordered that Iulio M. Taufaasau be registered as the holder of the matai title Mauga, attached to the village of Pago Pago.

█ The Mauga title must be seen in historical and qualitative perspective in order to dispose of this appeal. Historically, the Mauga is known to be among the oldest and most influential matai titles of American Samoa. Available historical records dating from the earliest contacts of the Europeans with eastern or American Samoa contain numerous references to the Mauga. Due to the strategic location of the village of Pago Pago in relation to Pago Pago harbor the successive Europeans and later Americans who lowered anchor at Tutuila would quite naturally be expected to be in contact with Mauga, the leading matai of the village of Pago Pago. And since these visitors to Samoa from the "outside" were usually interested in the commercial potential of Pago Pago harbor or other matters near at hand to the village of Pago Pago the Mauga influence was undoubtedly a very real thing. Indeed, history tells us that it was the High Chief Mauga of Pago Pago who entered into an agreement or "treaty" in 1872 with Commander Richard Meade, USN, by which the United States was conceded the right to maintain a naval station in Pago Pago bay in return for "the friendship and protection of the great government of the United States." Although this "treaty" was never ratified by the United States Senate and therefore never achieved de jure status it nevertheless strengthened America's position in eastern Samoa, with a corresponding weakening of the competitive positions of other nations pursuing their own national interests through Samoan contacts.

More importantly, apropos the prestige and influence of the Mauga, the Samoan people regarded the agreement as binding. (See *Amerika Samoa,* by Capt. J. A. C. Gray, United States Naval Institute, 1960.) Although additional references could be cited the foregoing will suffice to suggest the Mauga's position of relative importance in the Samoan way of life.

The record in this appeal shows that following the death on February 7, 1963 of Mauga Palepoi, the last holder of the title, the family met only once in a general meeting in August 1964 but that meeting failed to produce any agreement as to a successor to the title. In fact, that abortive meeting served largely to disclose how hopelessly unable the family members were at that time to make any progress toward harmony leading to the selection of a successor. As is unfortunately true when an important matai title remains vacant for an extended period the absence of a Mauga to speak for the family began to have a debilitating effect on the family interests. R. S. Manuma filed his application to be registered as the title holder. This application led to 15 separate objections by individuals claiming superior entitlement. These were the prevailing conditions under which the present litigation was commenced and it was against this historical background that the Trial Division undertook its formidable task.

One objector died before trial. During the period between a pre-trial conference and the close of the first day of trial, six of the fifteen candidates withdrew, leaving the applicant and eight objectors. The trial consumed ten days and required 260 pages of personal notes by the Court. The transcript of testimony covers 419 pages. Following the entry of the Trial Division's decree which awarded the title to Iulio M. Taufaasau (hereafter referred to as Iulio),

three of the eight unsuccessful candidates appealed. They are R. S. Manuma, referred to in this appeal decision as Ropati; Sialega P. Mauga, called Sialega hereafter; and S. P. Aumoeualogo, who will be referred to as Salanoa.

Because it is so pertinent to the disposition of the issues raised on appeal it is important to refer at the outset to the provisions of Section 6.0107 of the Code of American Samoa, 1961 Edition, which reads:

■ "Consideration given by Court: In the trial of matai title cases, the High Court shall be guided by the following considerations, in the priority listed:

"First: The best hereditary right in which the male and female descendants shall be equal in families where this has been customary, otherwise the male descendant shall prevail over the female.

"Second: The wish of the majority or plurality of those clans of the family as customary in that family.

"Third: The forcefulness, character, personality, and knowledge of Samoan customs.

"Fourth: The value of the holder of the matai title to the family, the village, and the country."

None of the appellants says the Trial Division failed to abide by the quoted statutory guide lines. Indeed, a mere casual reading of the 25-page opinion would show the frivolity of such a contention. The thrust of each appellant's attack on the decree is that the Trial Division did not accept the appellant's own evaluation of his claimed superior qualifications.

■ Before turning to the specific points of the three appeals we refer now to the statutory provisions and the Rules of Court which must be applied in the Appellate Division. Section 3.0503 of the Code provides, in part:

"* * * The findings of fact of the Trial and Probate Divisions of the High Court in cases tried by them shall not be set aside by the Appellate Division of that court unless clearly erroneous, * * *"

951

 Rule 7A of the Rules of Procedure in the Appellate Division, dated June 8, 1962 provides, in part, as follows:

"If one of the grounds of appeal is that the evidence does not warrant the finding, the statement of grounds shall specify what essential element or elements it is claimed have not been satisfactorily proved. If a ground of appeal is that the finding or findings of fact are clearly erroneous or are contrary to the evidence, the statement of grounds shall specify wherein such finding or findings are clearly erroneous or against the weight of the evidence or contrary to the evidence, as the case may be.

No other grounds of appeal than those set out in the notice of appeal shall be considered unless the error is so manifest and prejudicial that the Court would be justified in taking notice of it on its own initiative. Issues, other than jurisdictional, not raised in the trial court will not be considered on appeal."

 The foregoing statutory and regulatory provisions sharply constrict the latitude of the Appellate Division and they impose a heavy burden on the appellant. Above all, they make it crystal clear that a trial de novo in the Appellate Division is not permitted. And the significance of this restriction on the Appellate Division is most apparent in that type of case, as is the present one, in which the personality, character, demeanor and credibility of the litigants are vital elements in the case.

We look now at each appeal. Sialega's notice of appeal, in pertinent part, recites only:

"The Objection to the following in regard to the High Court concerning my qualifications, the Value to the Government of American Samoa and Forcefulness.

"I am therefore, requesting for an APPEAL of this same Trial of the Mauga Case."

 During his oral argument counsel for Sialega undertook to discredit a portion of the testimony given by Iulio at the trial. He did not even attempt to cure the fatal

inadequacy of Sialega's written notice of appeal as the same is measured against the statutory and regulatory requirements heretofore quoted. Sialega's attack on a portion of Iulio's testimony went into matters that were wholly outside the record, that were not raised in cross-examination at the trial, and were not specified in the notice of appeal. In the circumstances we hold that Sialega failed to shoulder his burden of showing any error—even slight error—in the decision from which the appeal is taken.

Ropati's appeal in its pertinent portion, simply states:

"That the decision was rendered in favor of Iulio based said decision on the opinion of the Court that Iulio prevails over Manuma on the third and fourth issues.

"That petitioner believes that petitioner's qualifications prevails over the defendant."

Ropati's notice of appeal, like that of Sialega, manifestly lacks that specificity in the assignment of error that is required. Despite its failure to contain a concise statement of grounds the gravamen of Ropati's appeal is that the decision of the Trial Division is against the weight of the evidence. Ropati is saying, in effect that the evidence before the Trial Division, fairly construed, *clearly* showed that Ropati had qualifications superior to those of Iulio in the matters of forcefulness, character, personality, knowledge of Samoan customs, and value to the family, the village, and the country.

As previously noted, the Appellate Division does not sit as a trial court trying the case de novo but is limited by the record and the appellant's specifications of error. When, as here, the appellant fails to furnish a "statement of grounds [that] shall specify wherein such finding or findings are clearly erroneous or against the weight of the evidence" (as required by the Rules of Procedure) our search for

953

reversible error leads us to take notice of how the Trial Division disposed of the comparative qualifications of Ropati and Iulio with respect to the third and fourth categories listed in the statute and quoted heretofore in this opinion.

Sixteen pages of the Trial Division's 25-page opinion are devoted exclusively to a recitation and evaluation of pertinent testimony gleaned from the voluminous transcript dealing with the comparative qualifications of Ropati and Iulio in the matters of forcefulness, character, personality, knowledge of Samoan customs, and value to the family, the village, and the country. In summing up the Trial Division said:

> "We have tried to set out at length the pertinent testimony of the candidates we have ranked first and second. To be sure, we have not covered all the testimony that is on the record for that is very voluminous, but yet after all this review of the evidence and testimony, there is one point which cannot fully be set down in words, namely, the individual personal demeanor, class and character of the persons as they testified and the impressions they left with the Court."

This quotation from the decision is hardly the language of a Trial Court bent on the mischief of erroneously disregarding compelling evidence. Instead, it shows that the Court was fully aware of the fact that the very nature of the issues, namely, comparative forcefulness, character, and the like, made it inescapable that the Court bottom its opinion in large measure upon the personal impressions made on the Court by the candidates during the course of the trial. Considering the Trial Division's meticulous sifting of all the pertinent testimony we hold that Ropati has failed on appeal to demonstrate that the decision of the Trial Division is clearly against the weight of the evidence.

954

Salanoa's notice of appeal is in a different form in that it is largely a presentation of written argument from which the reader is required to extract the appellant's grounds of appeal.

Salanoa first says that the Court discriminated against him when it accepted a pre-trial stipulation agreed upon by the parties which fixed the respective degrees of Mauga blood of eight of the candidates while no stipulation was reached by the parties regarding the Mauga blood of three of the candidates, one of whom was Salanoa. Just how the Court's acceptance of the parties' stipulation operated to discriminate against the appellant has not been made clear. This was the parties' stipulation—not that of the Court. The parties refused to stipulate concerning Salanoa having any Mauga blood, obviously not being persuaded to accept his claim of Mauga blood. And the Court, after all the evidence was in, was similarly not impressed with Salanoa's claim because it held specifically on the basis of the evidence that he had no Mauga blood whatsoever.

Salanoa's appeal consisted of over five typewritten pages of argument plus a supplement of eight pages containing mostly excerpts from various portions of the transcript of testimony. Central to all of Salanoa's argument on appeal is his contention that the Trial Division erred in holding he had no Mauga blood. Somewhat collaterally he adds, without persuasive proof of its correctness, his contention that he would have unquestionably prevailed over all other candidates on the Third and Fourth categories that have been quoted above if the Court had accepted his contentions concerning his alleged possession of Mauga blood. This collateral contention of Salanoa concerning his alleged superior qualifications under categories Three and Four rests upon an

955

assumption on the part of the appellant and cannot be borne out by the record upon which this Court must rely in disposing of this appeal.

As to Salanoa's claim of Mauga blood the record shows that he claims to have descended from Tulimalefoi, a child of Mauga Tamaalemalo. When questioned, Salanoa said that he was supported in his candidacy by one of the three clans in the Mauga family, the Tulimalefoi clan. When he was questioned as to his understanding of what the statute means (Section 6.0107) in referring to "clans of the family" Salanoa testified that he considered the clans as "the children of the founder of the title." (TR. p. 283.) Elsewhere in his testimony Salanoa contended that Mauga Tamaalemalo was the first Mauga, this contention, of course being compatible with his contention that there was a Tulemalefoi clan.

Except for Salanoa's evidence all the rest of the evidence in this case (as well as the record in an earlier Mauga title case, Case No. 3-1935, *Manuma et al. v. Afamasaga Sialega*) is consistently to the effect that the first holder of the Mauga title was Mauga Mulivai and that Mauga Tamaalemalo was the second holder of the title. On appeal Salanoa is asking us to ignore this great mass of persuasive evidence and accept his unsupported statements of fact which were not concurred in by any of the other candidates. This we cannot do.

Not only is an appellant under a heavy burden of showing that the decision appealed from is clearly erroneous but he must also satisfy the Appellate Court that in the absence of such error the Trial Court would have reached a decision more favorable to the appellant. The case made by Salanoa on appeal falls far short of sustaining this heavy burden.

From what has been said it follows that the decree of the Trial Division should be affirmed.

956

## ORDER

It is hereby ORDERED that the decree of the Trial Division awarding the title Mauga attached to the village of Pago Pago to Iulio M. Taufaasau be and it is hereby affirmed.

The Registrar of Titles will be informed of this order of affirmance.